UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AISHA JONES,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.
_______________________________/

Case No. 06-10995

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [10]**

Pending before this Court is the Defendant United States' Motion for Summary Judgment, filed on November 1, 2006. Plaintiff Aisha Jones brought suit against Defendant under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 *et seq.*, for injuries she suffered in an automobile accident with a U.S. Postal Service mail truck. In support of its motion for summary judgment, the government argues that (1) Plaintiff's injuries do not constitute the "serious impairment of body function" necessary to make her eligible for separate tort damages under Michigan's No-Fault Insurance Law, Mich. Comp. L. § 500.3135(1), and (2) Plaintiff has not met her burden of showing causation. For the reasons set forth below, the Court DENIES Defendant's motion for summary judgment.

## I. FACTS

The facts of this case are straightforward, and not materially disputed by either

side.[1] On April 9, 2005, Plaintiff was parked on southbound Eighth Street at the corner of West Jefferson Avenue in the city of Detroit. (Def.'s Mot. for Summ. J. at 1, hereinafter "Def.'s Mot.") A U.S. Postal Service truck traveling southbound on Eighth struck Plaintiff's vehicle as the truck attempted to make a right turn onto West Jefferson.[2] Plaintiff claims that the accident caused various physical injuries to her "spinal region[] . . . head, neck, upper back, left arm and left shoulder," as well as post-traumatic stress disorder. (Compl. ¶ 8.)

Plaintiff suffered similar injuries on two separate occasions prior to the accident at issue here. On October 13, 2003, Plaintiff slipped and fell at the Wal-Mart where she worked, injuring her hip. (Jones Dep., Def.'s Mot., Ex. 1 at 19-20 ("Jones Dep. I").) Plaintiff subsequently complained of ongoing back pain to Dr. Vornberger, whom she was referred to following the slip and fall accident. Dr. Vornberger's notes indicate that he released her to return to work on April 22, 2004, with the restriction that she could "lift[] no more than 15 pounds and not stand[] for longer than 45 minutes." (Def.'s Mot., Ex. 3.) Then, on October 8, 2004, Plaintiff was involved in another automobile accident which led to a brief hospitalization and additional follow-up care. (Def.'s Mot. at 4.) She

---

[1]The government's brief and Plaintiff's Complaint state that the accident occurred on April 9, 2005, but Plaintiff's Response and the police report list a date of April 10. It appears that the accident occurred late in the evening on April 9, and the police report was not taken until the early hours of April 10. Regardless, the specific date is not material to the resolution of the case.

[2]Again, there is a slight difference in the facts as stated by the parties. Plaintiff contends that she was at a complete stop when she was hit, (Pl.'s Resp. at 4) while the government states that Plaintiff was in the process of turning right onto West Jefferson. (Def.'s Mot. at 1.) Neither party argues that this is a material fact for purposes of this motion, so the Court will treat the discrepancy as irrelevant at this stage.

complained of head and lower back pain following this incident. (Jones Dep. I at 39; Def.'s Mot. Ex. 5.) Plaintiff began seeing Dr. Beale, an orthopedic surgeon, and he certified her to return to work on January 11, 2005. (Def.'s Mot., Ex. 8.) Plaintiff's pain persisted, however, and Dr. Beale certified her as indefinitely disabled on February 22, 2005. (Def.'s Mot., Ex. 9.)

**II. STANDARD OF REVIEW - MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of

evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. ANALYSIS

Cases brought under the FTCA require a federal court to apply the state law of the jurisdiction where the allegedly tortious act occurred. 28 U.S.C. § 1346(b)(1); *Sellars v. U.S.*, 870 F.2d 1098, 1101 (6th Cir. 1989). In Michigan, the state's no-fault insurance laws govern a plaintiff's ability to obtain tort-related damages arising out of an automobile accident.

### A. Serious Impairment of a Body Function

In order for the government to be subject to non-economic liability arising out of the accident at bar, Plaintiff must be able to show that she "suffered . . . serious impairment of [a] body function" as a result of the governmental employee's actions while driving the postal truck. Mich. Comp. L. § 500.3135(1). The statute goes on to define "serious impairment of body function" as "[1.] an objectively manifested impairment of [2.] an important body function that [3.] affects the person's general ability to lead his or her normal life." Mich. Comp. L. § 500.3135(7). The Michigan Supreme Court has outlined the following framework for determining whether this standard has been met:

> First, a court must determine that there is no factual dispute concerning the nature and extent of the person's injuries; or if there is a factual dispute, that it is not material to the determination whether the person has suffered a serious impairment of body function. . . .
>
> Second, if a court can decide the issue as a matter of law, it must next determine if an "important body function" of the plaintiff has been impaired.

> . . . If a court finds that an important body function has in fact been impaired, it must then determine if the impairment is objectively manifested. Subjective complaints that are not medically documented are insufficient.
>
> If a court finds that an important body function has been impaired, and that the impairment is objectively manifested, it then must determine if the impairment affects the plaintiff's general ability to lead his or her normal life. In determining whether the course of the plaintiff's normal life has been affected, a court should engage in a multifaceted inquiry, comparing the plaintiff's life before and after the accident as well as the significance of any affected aspects on the course of the plaintiff's overall life. Once this is identified, the court must engage in an objective analysis regarding whether any difference between the plaintiff's pre- and post-accident lifestyle has actually affected the plaintiff's "general ability" to conduct the course of his life. Merely "any effect" on the plaintiff's life is insufficient because a de minimis effect would not, as objectively viewed, affect the plaintiff's "general ability" to lead his life.

*Kreiner v. Fischer*, 683 N.W.2d 611, 625-26 (Mich. 2004).

**1. Factual dispute regarding Plaintiff's injuries**

As outlined in *Kreiner*, this Court's first step is determining whether there is a "factual dispute concerning the nature and extent of the person's injuries." While the instant parties contest the issue of whether the April 2005 accident was the *cause* of Plaintiff's injuries, there is no real dispute over the fact that Plaintiff suffers from a number of neck, back and shoulder injuries that both cause her pain and have necessitated medical treatment. Therefore, the first requirement is met, and the Court may proceed to the next inquiry, whether one of Plaintiff's important body functions has been impaired.

**2. Important body function**

Michigan courts have found that a person's ability to move their back and neck constitutes an important body function. *Meklir v. Bigham*, 383 N.W.2d 95, 98 (Mich. Ct.

App. 1985), *rev'd on other grounds*, *DiFranco v. Pickard*, 398 N.W.2d 896 (Mich. 1986). As both Plaintiff and Dr. Beale state that the accident affected Plaintiff's ability to move her back, this element is also met here. Next, the Court is to consider whether Plaintiff's impairment is objectively manifested.

**3. Objectively manifested impairment**

"'[I]n order for an impairment to be objectively manifested, there must be a medically identifiable injury or condition that has a physical basis.'" *Jackson v. Nelson*, 654 N.W.2d 604, 610 (Mich. Ct. App. 2002) (quoting Michigan Model Civil Jury Instruction § 36.11). In general terms, this means that there must be some medical support for the plaintiff's claims of injury, as "[s]ubjective complaints that are not medically documented are insufficient." *Kreiner*, 683 N.W.2d at 625. Dr. Beale, the physician who treated Plaintiff following her most recent accident, has provided sufficient medical confirmation for Plaintiff's stated injuries based on his report that summarized Plaintiff's condition in the months following this accident. (Pl.'s Resp., Ex. 4.) Therefore, Plaintiff meets the third element outlined in *Kreiner*.

**4. Person's general ability to lead their normal life**

The final hurdle for a plaintiff seeking non-economic tort damages from an automobile accident is to show that "the impairment [of an important body function] affects the plaintiff's general ability to lead his or her normal life." *Kreiner*, 683 N.W.2d at 626. First, this is a subjective analysis that focuses on the individual plaintiff's particular life. Secondly, the analysis examines how the plaintiff's life changed following the accident, compared to their prior life. "Merely 'any effect' on the plaintiff's life is insufficient because a de minimis effect would not, as objectively viewed, affect the

plaintiff's 'general ability' to lead his life." *Id.* That said, it is not necessary that every aspect of a plaintiff's life change in order for them to be eligible for non-economic tort damages. *Id.* at n.16.

The *Kreiner* court continued, stating:

> The following nonexhaustive list of objective factors may be of assistance in evaluating whether the plaintiff's "general ability" to conduct the course of his normal life has been affected: (a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery.

*Id.* "Self-imposed restrictions, as opposed to physician-imposed restrictions, based on real or perceived pain do not establish this point." *Id.* at n.17. The *Kreiner* court then applied the foregoing framework to two consolidated cases from the Michigan Court of Appeals.

In the first, *Straub v. Collette*, 670 N.W.2d 725 (Mich. Ct. App. 2003), the plaintiff broke a finger and injured tendons in two additional fingers due to an automobile accident in September 1999. He had surgery to repair the tendons, which required him to wear a cast for a month, but the broken finger was allowed to heal on its own without additional medical treatment. Approximately two months after the surgery, the plaintiff was able to resume working as a cable television company lineman on a part-time basis of twenty to twenty-five hours per week. He returned to full-time employment within three months of the accident and resulting surgery. Although the plaintiff had some discomfort when performing his job, he could adequately handle the position's responsibilities going forward. *Kreiner*, 683 N.W.2d at 620.

Until late December, about two weeks after the plaintiff returned to work, he

reported still being unable to perform various household chores, including "washing dishes, doing yard work, and making property repairs." *Id.* In addition, he did not operate his archery shop or process deer meat during that fall's hunting season. By mid-January 2000, however, the plaintiff was able to rejoin a band as its bass guitar player for weekend performances. Although he was eventually able to engage in all of the same activities that he did prior to the accident, the plaintiff still lacked the ability to completely close his left hand. *Id.*

The other case on review was *Kreiner v. Fischer*, 671 N.W.2d 95 (Mich. Ct. App. 2003). That case involved a plaintiff who claimed of back, hip and leg pain arising out of a November 1997 automobile accident. The plaintiff visited his family doctor twice within the first week following the accident, receiving cortisone injections and being referred to physical therapy. When the pain persisted for six weeks despite these treatments, the plaintiff's physician referred him to a neurologist for additional tests that uncovered nerve irritation and degenerative disc disease. He saw the neurologist at least three more times during 1998, in May, August and October, receiving prescriptions for various pain medications and orders to engage in physical therapy. *Id.* at 621-22.

In August 1999 the plaintiff returned to the neurologist, complaining that the pain continued despite this treatment. The pain was caused by "[s]tanding, lifting, climbing a ladder, and staying in one position for a long time . . . ." *Id.* at 622. Subsequently, the plaintiff ceased seeing a physician or taking medications for his injuries. Despite the accident, the plaintiff was still able to continue his employment as a construction worker, but he was only able to work six-hour days compared to the eight hours he was able to work previously. He could only stand on a ladder for twenty minutes at a time, could not

do roofing work, and could not lift more than eighty pounds. The plaintiff was also unable to walk more than a half mile without resting or hunt rabbits, but he was able to hunt deer. *Id.*

In both *Straub* and *Kreiner*, the Michigan Supreme Court found that there was no factual dispute over either of the plaintiffs' injuries, the injuries were impairments that impaired an important body function, and were objectively manifested. *Id.* at 626-28. Therefore, the court proceeded to the element at issue here, namely, whether the plaintiffs' general abilities to live their lives were affected.

With regards to the plaintiff in *Straub*, the court found that his general ability to live his life was not affected, noting that his medical treatment and recuperation lasted less than two months, there were no complications with his recovery, he was able to resume almost all normal activities within four months of the accident, and he had no residual impairment. *Id.* at 627. "Considered against the backdrop of his preimpairment life and the limited nature and extent of his injuries, we conclude that Straub's postimpairment life is not so different that his 'general ability' to lead his normal life has been affected." *Id.*

The court came to the same conclusion regarding the plaintiff in *Kreiner*, despite the fact that some of the possible work he could undertake had changed. Although he could no longer engage in roofing work and had temporal and physical limitations that restricted him from performing certain types of work, the plaintiff's injuries did not cause him to miss any days on the job, he could still walk up to a half mile, and continued to go deer hunting. "A negative effect on a particular aspect of an injured person's life is not sufficient in itself to meet the tort threshold, as long as the injured person is still

generally able to lead his normal life." *Id.* at 628.

A post-*Kreiner* case that provides further context for this analysis is *McDanield v. Hemker*, 707 N.W.2d 211 (Mich. Ct. App. 2005). There, the court held that the plaintiff established a serious impairment of body function as a matter of law. In reaching this conclusion, the court noted that as a result of the accident the plaintiff was out of work for six to seven months, could no longer engage in recreational activities, had difficulty sleeping, experienced a diminishing sex life, was treated by physicians for a number of years, and those physicians opined that she would experience continued pain for the rest of her life. Of additional importance was the fact that the defendant in that case had not disputed the plaintiff's evidence. *Id.* at 219.

The instant case is somewhat different from those cited above, in that Plaintiff claims that she suffered similar injuries from two separate automobile accidents that occurred relatively close in time. Therefore, in order to defeat Defendant's motion for summary judgment, Plaintiff must bring evidence sufficient to show that, following the April 2005 accident, her general life had changed as it existed following the October 2004 accident. In attempting to meet this burden of production, Plaintiff has testified that she was no longer cleared to return to work after the April 2005 accident, and made the following statements at her deposition in this case:

> Q: Did you suffer any setbacks as a result of this accident?
>
> A: Yes.
>
> Q: How so?
>
> A: I'm not able to walk as much. I'm not able to do a lot of things that I was doing, that I was beginning to do, a lot of cleaning, shopping, grocery shopping. I can't do that.

> Q: What about recreational activities or social activities?
>
> A: The recreation is basically cut out. There's no recreation, none.
>
> * * *
>
> Q: How were your physical problems different after this accident that we are here for today, [the April 2005 accident] as opposed to what you might have been experiencing before?
>
> A: It's a lot more pain. The pain is really – I mean my back, basically, my posture has even changed. It's pushed over more. I have a lot of pain, a lot more pain, a lot less activity now. I can't even stand as much without assistance now. Before, I could, you know, kind of function, but now it's like I have to hold onto stuff or I just have to sit down. It's very painful.

(Jones Dep., Pl.'s Resp., Ex. 2 at 44-45 ("Jones Dep. II").)

To refute this testimony, the government points to the fact that a "Dr. Endress concluded that Plaintiff had recovered from her injuries as early as June 10, 2005," (Def.'s Mot. at 10) and Plaintiff's deposition related to the October 2004 accident indicated that she was unable to engage in the same activities as a result of that earlier incident. (Jones Dep. I at 55-58.)

Plaintiff's testimony regarding her clearance for work does not establish a change as a result of the April 2005 accident, as she was already restricted from working at the time of the most recent accident. On January 11, 2005, Dr. Beale stated that Plaintiff had sufficiently recovered from the October 2004 accident such that she could return to work. (Def.'s Mot., Ex. 8.) Then, on February 22, 2005, Dr. Beale signed a Disability Certificate stating that, at that time, Plaintiff was

> totally disabled from performing any advocational and/or vocational activities that involves: bending, twisting, and stooping; constant or repetitive reaching; prolonged standing and walking; lifting, and stair climbing. The patient would need household service's (sic) for: cleaning and cooking, etc.; as well as to care for the patient's personal needs: such as bathing, dressing, feeding, and

> hair care etc. The patient also need (sic) attendant services for running errands, such as to and from appointments, and someone to do his or her shopping.

(Def.'s Mot., Ex. 9.) Finally, Dr. Beale issued a Disability Letter on April 2, 2005, a week prior to the accident at issue in this case, stating that Plaintiff was "disabled from work/school until further notice." (Def.'s Mot., Ex. 12.) Therefore, since Plaintiff was totally disabled from work at the time of the accident, the inability to return to a job is not sufficient evidence to show that her general life changed in this manner following the most recent accident

Plaintiff's testimony establishes an issue of material fact regarding whether her normal life changed in other ways after the accident, however, as the government's proffered evidence on this point does not serve to refute Plaintiff's deposition testimony regarding her abilities following the April 2005 accident at issue in this case.[3] Moreover, Dr. Beale's deposition testimony indicated his opinion that Plaintiff's condition was physically worse following the April 2005 accident as follows:

> Her lower back I feel was a result – the ruptured disk was a result of the October 2004 accident. The difference between the October 2004 and the April 2005 accident is that the ruptured disk was not impinging on the thecal sac from the first accident. If you look at the MRI from the second accident on her lumbar spine, the same ruptured disk is impinging on the thecal sac. So there is a difference there. So I think in that sense her condition is worse.

---

[3]In addition, Dr. Beale's April 2, 2005 Disability Letter could be seen as a statement that her condition had improved relative to the February 22, 2005 Disability Certificate (where she was totally disabled), as the April 2 document only restricted her from working, and no longer mentioned her inability to take care of personal household needs. To be sure, it is possible to infer that the total disability provisions from February 22 still applied, and that the April 2 letter was merely reiterating the specific fact that Plaintiff could not work. Such an inference in Defendant's favor is precluded from consideration at the summary judgment stage, however.

(Beale Dep., Def.'s Reply, Ex. 20 at 35.)

The government correctly identifies evidence in the record to suggest that Plaintiff did not always follow her physicians' treatment plans, as well as several medical opinions that she is exaggerating her pain symptoms relative to the physical damage apparent from her various tests. Still, all evidence must be viewed in Plaintiff's favor as the non-moving party, so such conflicting evidence is not properly before the Court at the summary judgment stage of these proceedings.

In considering the list of factors outlined in *Kreiner* to determine if Plaintiff's general ability to conduct her life has been affected, she testified that following the April 2005 accident that she is no longer able to perform a number of activities that she had resumed doing following her October 2004 accident, these activities are similar to those taken into account by various Michigan courts when considering the issue at bar, she continued to be treated for her injuries by a number of physicians at the time of her most recent deposition in October 2005, and the pain does not appear to be improving despite spending over a year in various forms of treatment. While there is conflicting evidence in the record that could serve to refute these claims, Plaintiff has met the burden of pleading evidence sufficient to defeat Defendant's motion for summary judgment because she has raised evidence to show that her general life changed following the April 2005 accident.

Thus, the government is not entitled to summary judgment on the issue that Plaintiff did not suffer a "serious impairment of body function" under Mich. Comp. L. § 500.3135(1).

**B. Causation**

As with any negligence case, Plaintiff carries the burden of showing that the postal truck driver's actions were both the cause in fact and proximate cause of her injuries, since there is no presumption of causation under Michigan law. *Skinner v. Square D Co.*, 516 N.W.2d 475, 479-80 (Mich. 1994). In addition to Plaintiff's deposition testimony that the pain she experienced increased following the most recent accident, Dr. Beale also opined that her condition worsened after this accident. (Beale Dep. at 35.)

Defendant notes, however, that when Plaintiff was examined by a Dr. Trachtman on June 13, 2006,[4] his report indicates that she "state[d] that she also has pain in her right shoulder but this did not start until an accident in approximately April 2005." Dr. Trachtman also claims that she said "that th[e April 2005] accident only affected her right shoulder, the rest of her complaints in her neck, upper and lower back, hands, legs and feet were related to the [October 2004] accident and were not effected (sic) by the [April 2005] accident." (Def.'s Mot., Ex. 15 at 2.) At the summary judgment stage, however, all evidence must be viewed in a light most favorable to Plaintiff, so this Court is not in a position to weigh Plaintiff's potential admission to Dr. Trachtman against her deposition testimony or Dr. Beale's opinions.

Therefore, Plaintiff has raised sufficient evidence of causation to defeat the government's motion for summary judgment on this ground as well.

## IV. CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons

[4]Presumably in relation to Plaintiff's separate lawsuit arising from the October 2004 accident.

set forth above, the Court hereby orders as follows: Defendant's motion for summary judgment is DENIED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 26, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 26, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager